UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KELLY RAINEY,

                Plaintiff,

v.                                       Case No. 18-cv-196-pp

CHASE FORSTER,

                Defendant.

**ORDER GRANTING DEFENDANT'S MOTION AND REVISED MOTION FOR SUMMARY JUDGMENT (DKT. NOS. 82, 102) AND DISMISSING CASE**

      The plaintiff, who is representing himself, filed this lawsuit under 42 U.S.C. §1983. Dkt. No. 1. On July 31, 2018, the court screened the complaint and allowed the plaintiff to proceed against an unidentified Kenosha County Sheriff's Deputy on allegations that the deputy fondled the plaintiff's chest and pinched his nipple in an inappropriate fashion while conducting a pat-down search. Dkt. No. 14 at 4-5. The court ordered the plaintiff to identify the deputy by September 28, 2018. Id. at 6.

      On October 17, 2018, Magistrate Judge William Duffin (to whom the court had referred the case to handle pretrial matters) granted the plaintiff's motion to identify the deputy as defendant Chase Forster. Dkt. No. 30. The defendant filed an answer on November 28, 2018. Dkt. No. 37.

      This is where things began to go sideways. On February 15, 2019, Judge Duffin ordered the defendant to provide the plaintiff with a video showing the

1

defendant performing the pat-down search of the plaintiff. Dkt. No. 58. A little more than a week later, the defendant objected to Judge Duffin's order. Dkt. No. 59. He explained that, based on the plaintiff's recent filings, he was no longer confident that he was the person who had performed the search at issue. Id. The defendant asserted that he was one of two deputies who had transported the plaintiff from the Kenosha County Pretrial Facility (also referred to as the Kenosha County Jail) to the Kenosha County Detention Center on December 17, 2017, for a hearing. Dkt. No. 59 at 1. According to the time alleged in the complaint, the plaintiff was at the pretrial facility when the search happened. Id. The defendant noted that he and the other deputy had transported the plaintiff to the detention center shortly after the time alleged in the complaint. Id.

The defendant further explained that, in response to the plaintiff's discovery requests, Kenosha County had identified him as the deputy who performed the pat-down search at the *pretrial facility*. Dkt. No. 59 at 2. The plaintiff insisted in subsequent filings, however, that the search happened at the *detention center*, not the pretrial facility. Id. The defendant explained that if the complained-of search happened at the detention center, it was unlikely that he was the one who performed the search. Id.

About a week after the defendant filed his objections, the plaintiff sought to correct the time he had alleged that the search had occurred. He was

adamant that the search occurred at the detention center and that the defendant was the one who had performed the search. Dkt. Nos. 64, 65.

About four months later, on July 3, 2019, the defendant filed a motion for summary judgment, which he amended on October 21, 2019 to include copies of various procedural rules (he did not amend his brief in support or his proposed findings of fact). Dkt. Nos. 82, 102. The defendant argued, in part, that the plaintiff was mistaken as to the identity of the person who performed the allegedly improper search. Dkt. No. 83. He explained that he did not search the plaintiff at the detention center on December 20, 2017. Dkt. No. 90 at ¶33. In response, the plaintiff filed a "motion to amend his complaint so plaintiff can identify the deputy 'who' sexual abuse plaintiff on date December 20, 2017." Dkt. No. 94.

Judge Duffin held a telephone status conference on September 5, 2019 to address the plaintiff's motion and to discuss the possibility that the plaintiff had identified the wrong person as the deputy who searched him. See Dkt. No. 98. During the hearing, the plaintiff stated that he believed Forster was the name of the person who had searched him. Id. He also insisted that he would recognize the person who searched him if he saw him again. Id. To help the plaintiff identify the person who searched him, Judge Duffin asked the defendant's lawyer to show the plaintiff pictures of the two officers who transported him from the pretrial facility to the detention center, a picture of the intake officer working at the detention center when the plaintiff arrived

3

(Officer Deboer), and pictures of the two officers who transported the plaintiff from the detention center back to the pretrial facility. Dkt. No. 98 at ¶k; Dkt. No. 104 at 2.

On October 17, 2019, Judge Duffin held a follow-up telephone status conference. See Dkt. No. 101. The plaintiff explained that he was shown five pictures. Id. at 2; Dkt. No. 104 at 2. There were no names on the pictures, but he identified one of them as the person who improperly searched him. Dkt. No. 101 at 2; Dkt. No. 104 at 2. He was confident that the picture he chose was of the defendant. Id. It was not.

The defendant's lawyer explained that someone (it's not clear who) showed the plaintiff five pictures: the two deputies who transported the plaintiff to the detention center, the intake officer who was at the detention center when the plaintiff arrived, and the two deputies who transported him back to the pretrial facility. Dkt. No. 101 at 2; Dkt. No. 104 at 2. According to the defendant's lawyer, the plaintiff chose the picture of Deputy Coultrip, one of the deputies who transported the plaintiff back to the pretrial facility. Id. Dkt. No. 101 at 2; Dkt. No. 104 at 3. Deputy Coultrip was not at the detention center at time the plaintiff alleges the search occurred. Id.

According to the minutes from the hearing, defense counsel asked Judge Duffin to dismiss the case. Id. at 2. The plaintiff reiterated that he was sexually assaulted and asked if he could see the pictures again. Id. Judge Duffin denied that request, and said he could not think of anything else he could do to help

4

the plaintiff identify the individual who searched him. Id. In the written order following the hearing, Judge Duffin noted that he'd told the plaintiff at the hearing that he was "not going to let [the plaintiff] keep guessing until he happened to guess a person who was present during the transport from the jail to the detention center." Dkt. No. 104 at 3.

Judge Duffin set deadlines for the plaintiff to respond to the defendant's summary judgment motion and for the defendant to reply in support of his motion. Dkt. No. 104 at 4. He also explained to the plaintiff that, when he responded to the defendant's motion, he must respond to each of the defendant's proposed findings of fact, either by agreeing with each fact or explaining why he disagreed with a particular fact. Id. Judge Duffin cautioned the plaintiff that if he did not indicate whether he agreed or disagreed with a proposed fact, the court would assume that he agreed with the fact. Id.

I. **RELEVANT FACTS**

The defendant is a Kenosha County Sheriff's Deputy. Dkt. No. 90 at ¶1. On the morning of December 20, 2017, the defendant and Deputy Boldus worked conveyance, transporting inmates from one location to another. Id. at ¶25. That day, they worked the noon transport, moving inmates from the pretrial facility to the detention center for hearings and moving inmates (not necessarily the same inmates) back to the detention center after their hearings were over. Id. at ¶27.

The defendant explains that the handling of inmates is always the same when transporting them from one facility to another. Id. at ¶27. Policy requires that deputies perform pat-down searches of every inmate leaving the pretrial facility before they enter the conveyance van. Id. at ¶43, 45-46. The defendant and Deputy Boldus left the pretrial facility at about 11:37 a.m., moving several inmates, including the plaintiff, to the detention center. Id. at ¶28.

Correctional Officer Deboer was working as the admission/release officer at the detention center when they arrived. Id. at ¶29. Upon arrival at the detention center, the defendant and Boldus escorted the inmates from the sally port area to the detention center. Id. at ¶31. Under a detention center policy and procedure, when inmates arrive at the detention center, the admission/release officer at the detention center is responsible for conducting pat-down searches of the arriving inmates before an officer moves the inmates to a cell. Id. at ¶¶32, 41-42.

The defendant asserts that he did not conduct a pat-down search of the plaintiff at the detention center. Id. at ¶33. In fact, he asserts that he has *never* conducted a pat-down search of an inmate upon arrival at the detention center. Id. at ¶54. The defendant and Deboer explain that Deboer was responsible for searching the inmates who arrived at the detention center on December 20 because he was the admission/release officer working that day. Id. at ¶34. According to Deboer, after conducting pat-down searches of the incoming inmates, he escorted some of the inmates to various dorms; he escorted the

plaintiff to HW (it is unclear what HW stands for) to wait for his revocation hearing. Id. at ¶35; Dkt. No. 86 at ¶8.

According to the defendant, when he and Boldus arrived at the detention center, nine inmates were waiting to be transported back to the pretrial facility. Dkt. No. 90 at ¶36. As required by policy, the defendant and Boldus searched the nine inmates before they entered the conveyance van; they then left the detention center shortly after noon. Id. at ¶¶37-38, 43.

The plaintiff did not leave the detention center until about 7:45 p.m. Id. at ¶39. Neither the defendant nor Boldus were involved in transporting the plaintiff back to the pretrial facility. Id. at ¶40.

The plaintiff filed a complaint about the search, which the City of Kenosha Police Department investigated. Id. at ¶11. As part of the investigation and to identify the subject of the plaintiff's complaint, the Police Department showed the plaintiff pictures of four deputies who were working transports at some point on December 20, 2017. Id. at ¶13. The pictures were of Boldus and the defendant (the two deputies who transported him *to* the detention center) and of Deputy Isaac and Deputy Coultrip (the two deputies who transported him *from* the detention center). Id. at ¶13, 28; Dkt. No. 88-1 at 12-15. The plaintiff did not identify or recognize any of the people in the pictures as the deputy who performed the allegedly improper search. Dkt. No. 90 at ¶14; Dkt. No. 88-1 at 13.

In April of 2019, the plaintiff wrote a letter to defense counsel, and enclosed a January 13, 2018 Kenosha News newspaper article. Id. at ¶19; Dkt. No. 84-1. The letter identified the person in the picture accompanying the article as the deputy who performed the alleged improper search. Dkt. No. 90 at ¶20; Dkt. No. 84-1 at 1. The person in the picture is not the defendant, nor is it Boldus, the deputy who accompanied the defendant on December 20. Id. at ¶¶21-22. Neither party has identified the two deputies in the photo accompanying the article.

According to the plaintiff, he recognized the deputy accompanying the deputy who performed the allegedly improper search as a former correctional officer at the Kenosha County Jail. Id. at ¶10. Boldus (the deputy who accompanied the defendant) never worked as a correctional officer at the jail/pretrial facility or the detention center. Id. at ¶4. Also, during the Kenosha Police Department's investigation, the plaintiff identified Deputy Isaac as the deputy who had accompanied the deputy who allegedly improperly searched him, but Isaac was not present during the time of the allegedly improper search. Id. at ¶¶11-12.

## II. DISCUSSION

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a); see also

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B. The Court's Analysis

To survive summary judgment in a case under §1983, a plaintiff must provide evidence from which a jury could reasonably conclude that the defendant was personally responsible for the alleged constitutional violation. Colbert v. City of Chi., 851 F.3d 649, 657 (7th Cir. 2017). The plaintiff

9

continues to insist that the defendant is the deputy who improperly searched him, see dkt. no. 109 at 1; given the evidence before the court, no jury could reasonably reach the same conclusion.

The defendant has declared under penalty of perjury that he did not search the plaintiff at the detention center. Dkt. No. 87 at ¶4. He has declared under penalty of perjury that in accordance with the relevant policy and procedures, he has never searched *any* inmate arriving at the detention center. Id. at ¶6. While the defendant admits that he searched the plaintiff at the pretrial facility *before* he and another deputy transported the plaintiff to the detention center, the plaintiff has repeatedly asserted that the allegedly improper search occurred at the detention center, not at the pretrial facility. In his objection to the defendant's motion for a protective order, he stated that the "incident occurred at the Kenosha Detention Center, 4777 88th Ave Kenosha, WI 53144." Dkt. No. 54 at 1. He repeated the location—the Kenosha Detention Center—four times in that document, as well as denying that he had ever said that the incident occurred at the pretrial facility. Id. at 1-2. He repeated these assertions—that he had never stated he was abused at the pretrial facility, and that the incident happened at the detention center, in another filing on March 4, 2019. Dkt. No. 64. He filed a motion demanding images, videotapes and photographs from the detention center. Dkt. No. 66. He filed a statement on March 18, 2019, insisting that the assault happened at the detention center. Dkt. No. 69. These are a few of the pleadings in which the plaintiff adamantly

asserts that the alleged sexual assault occurred at the detention center; there are more.

The plaintiff insists that the defendant is the one who searched him, and that he did it at the detention center, but the plaintiff's insistence is not enough to create a triable issue of fact on this point. The plaintiff originally did not know the name of the deputy who searched him; he used a John Doe placeholder in his complaint. This is not a situation where the plaintiff knew the defendant from prior experiences or interactions. The sheriff, who was named as a defendant for the limited purpose of helping the plaintiff identify the name of the Doe defendant, gave the plaintiff the defendant's name based on the time alleged in the complaint. That time indicated that the search happened at the pretrial facility.

Only when Kenosha County identified the defendant as the person at the pretrial facility did the plaintiff identify the defendant as the deputy who conducted the allegedly improper search, and he has doggedly maintained that it was the defendant ever since. Yet he also has doggedly maintained that the improper search did *not* occur at the pretrial facility—the place the defendant concedes that he *did* search the plaintiff. The court does not understand why the plaintiff continues to insist that the defendant is the deputy who performed the allegedly improper search at the detention center despite evidence to the contrary, but it does not matter. Based on the evidence, no jury could reasonably agree with him.

On three separate occasions, the plaintiff has failed to identify the defendant as the deputy who searched him. The first time, someone from the Kenosha police department showed the plaintiff pictures of the four deputies who transported him to and from the detention center. The plaintiff was unable to recognize any of them as the person who improperly searched him. He identified Deputy Isaac as the deputy who had accompanied the deputy who searched him, but Isaac did not work transport with the defendant that day and Isaac was not working at the time the plaintiff asserts the search happened. Isaac was one of the deputies who transported the plaintiff back to the pretrial facility many hours after the plaintiff says the search happened.

The second time, the plaintiff identified someone pictured in the newspaper as the deputy who had improperly searched him, but the defendant is not the person pictured in the paper. Nor does the photo include the deputy who worked with the defendant that day.

The final time, the defendant's lawyer arranged to have the plaintiff view five pictures: the two deputies who transported him to the detention center, the intake officer at the detention center and the two deputies who transported him from the detention center. The plaintiff selected a picture, but it was not of the defendant. It was a picture of Deputy Coultrip, one of the deputies who transported the plaintiff from the detention center many hours after the plaintiff asserts the improper search happened. The plaintiff maintains that

12

Coultrip was not present when the allegedly improper search happened. Dkt. No. 101 at 2.

Because the plaintiff has no first-hand knowledge of the name of the deputy who searched him and because he has presented no evidence from which a jury could reasonably conclude that the defendant was the deputy who searched him, the defendant is entitled to summary judgment. See, e.g., Colbert, at 657 (explaining that at summary judgment, the plaintiff must put forth evidence to support his claim that a particular officer was the one who violated the Constitution); Johnson v. Rimmer, 936 F.3d 695, 710-11 (7th Cir. 2019).

Finally, the court will deny the plaintiff's request that it dismiss this case without prejudice "so plaintiff may refile [his] lawsuit." Dkt. No. 105 at 3. The plaintiff has consistently insisted that the improper search occurred when he arrived at the detention center (as opposed to when he was transported back to the pretrial facility many hours later). The evidence supports a conclusion that there are only three people who could have performed the search at the detention center at the time the plaintiff alleges it happened: the defendant, Deputy Boldus (who was working as the other transport deputy) and Officer Deboer (the intake officer at the detention center). The evidence does not support the conclusion that the defendant performed the search, and the plaintiff consistently has stated that neither Boldus nor Deboer conducted the search. See Dkt. No. 109 at 1. Given the plaintiff's insistence that the search

occurred shortly after he arrived at the detention center and that neither Boldus nor Deboer is the person who searched him, it would be futile to allow him to refile his case. Based on the plaintiff's own assertions, there is no one left for him to sue.

## III. CONCLUSION

The court **GRANTS** the defendant's motion and amended motion for summary judgment. Dkt. No. 82, 102. The court **DISMISSES** this case and will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the

entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 10th day of January, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**